# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MICHAEL J. WRIGHT,**

        **Plaintiff,**

**v.**                                            **Case No: 6:17-cv-436-Orl-41DCI**

**JEFFREY LEE ASHTON, BENJAMIN DAVID BAIRD, PAMELA JO BONDI, KEVIN BOOKBINDER, MARIO CARDENAS, A. JAMES CRANER, IAN DOWNING, CAROL E. DRAPER, FELIX ECHEVARRIA, BRANDON LANE, JACQUELINE RAE LUKER, JAMES S. PURDY, MICHAEL B. STRICKLAND, ROBERT NEAL WESLEY and BRADLEY A. WHEELER,**

        **Defendants.**

---

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS AND TO STRIKE (Doc. 78)** |
| **FILED:** | **June 30, 2017** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

| MOTION: | VERIFIED MOTION TO SET ASIDE CLERK'S DEFAULT BY DEFENDANT ECHEVARRIA (Doc. 91) |
|---|---|
| FILED: | July 13, 2017 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

| MOTION: | RENEWED MOTION FOR DEFAULT JUDGMENT (Doc. 108) |
|---|---|
| FILED: | August 10, 2017 |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| MOTION: | MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT (Doc. 110) |
|---|---|
| FILED: | August 17, 2017 |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part**.

### Procedural Background

On March 10, 2017, Plaintiff filed a "Complaint for Violation of Civil Rights" against 15 named defendants.  The Plaintiff is proceeding *pro se*, and is not proceeding *in forma pauperis*.

The Defendants can be grouped into a few overarching groups.  The Officer Defendants, all current members of the Kissimmee Police Department (KPD), are Defendants Mario Cardenas, Ian Downing, Brandon Lane, Michael Strickland, and Bradley Wheeler.  Defendant Felix Echevarria (not included within references to the Officer Defendants) was an active member of KPD during some times at issue in this case, but, following criminal charges, is no longer an active member of KPD, although it is unclear whether he has been terminated or he has been placed on

administrative leave pending the outcome of the criminal charges.   The Judicial Process Defendants make up the remainder of Defendants, and are prosecutors, public defenders, and judges.  As explained by the Judicial Process Defendants in their motion to dismiss:

> Benjamin Baird was the assistant state attorney who prosecuted the criminal action against Wright,
>
> Kevin Bookbinder was a public defender who filed a motion to discharge before trial and thereafter a motion to arrest judgment on behalf of Wright;
>
> Circuit Judge A. James Craner presided over the criminal trial of Wright and heard subsequent motions, and
>
> County Judge Carol E. Draper presided over Wright's preliminary hearings, and that both judges are duly constituted judges under Article V of the Florida Constitution;
>
> Jacqueline Rae Luker was an assistant public defender who believed an *Anders* brief should be filed;
>
> Pamela Jo Bondi was Florida's Attorney General and a respondent in a *habeas corpus* proceeding;
>
> Jeffrey Ashton was the State Attorney for the Ninth Judicial Circuit;
>
> James S. Purdy was the Public Defender for the Seventh Judicial Circuit; and
>
> Robert Neal Wesley was the public defender for the Ninth Judicial Circuit which are elected constitutional officers.

Doc. 78 at 7 (paragraph breaks added, and duplicative references to Defendants Ashton and Bondi removed).

On June 20, 2017, the Officer Defendants filed a motion to quash service of Process and motion to dismiss for lack of personal jurisdiction.  Doc. 71.  The Officer Defendants sought to quash service of process and to dismiss the Complaint as to them because Plaintiff's process server

simply delivered the summonses to the front desk of the KPD, and failed to personally serve the Officer Defendants as required by law.  *Id*. at 2-4.

On June 28, 2017, rather than responding to the Officer Defendants' motion, Plaintiff filed a motion to strike their motion.  Doc. 77.

On June 30, 2017, the Judicial Process Defendants filed a motion to dismiss, which is now before the Court.  Doc. 78.  In their motion to dismiss, the Judicial Process Defendants made eleven separate arguments asserting that the Complaint should be dismissed with prejudice as to each of them.  *Id*.  As will be discussed further *infra*, these arguments include, for example, assertions that the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim, assertions that the Court should abstain from hearing this case under principles of comity, and assertions that the Complaint should be dismissed with prejudice because the Judicial Process Defendants are, depending on the particular defendant, protected by immunity (as to the prosecutors and judges) or are not subject to § 1983 actions because they are not acting under color of state law (as to the public defenders).  *Id*.

On July 11, 2017, Plaintiff filed a single document that asserted both a motion for Clerk's default (Doc. 81) against Defendant Echevarria and a motion for default judgment (Doc. 82) against Defendant Echevarria.[1]  According to the Motions, Defendant Echevarria was properly served on June 8, 2017.  Docs. 81; 82; *see also* Doc. 67.  Defendant Echevarria had not responded to the Complaint and the time for such a response had expired on June 29, 2017.

On July 12, 2017, Plaintiff filed another single document that asserted both an amended motion for Clerk's default (Doc. 85) against Defendant Echevarria and an amended motion for

---

[1] The Court interpreted these two identical filings as separate motions, one for entry of clerk's default (Doc. 81) and one for default judgment (Doc. 82).

default judgment (Doc. 84) against Defendant Echevarria.[2]   These amended motions were amended to include a memorandum of law.  Docs. 84; 85.

That same day, July 12, 2017, Plaintiff filed a single document that asserted both a motion for Clerk's default (Doc. 86) against the Officer Defendants and a motion for default judgment (Doc. 87) against the Officer Defendants.[3]  According to the motions, the Officer Defendants were properly served and failed to file an answer to the Complaint, thus necessitating an entry of clerk's default and default judgment.  Docs. 86; 87.

On July 13, 2017, the Court entered an Amended Order[4] resolving several pending motions.  Doc. 89.  The Court denied the Officer Defendants' motion to dismiss, but granted their motion to quash service of process, directing Plaintiff to properly serve the Officer Defendants if Plaintiff wished to prosecute this case.  *Id.*  The Court denied several of Plaintiff's various motions to strike, motions for entry of Clerk's default, and motions for entry of default judgment.  *Id.*  The Court also ordered the Clerk to consider Plaintiff's motion for entry of Clerk's default as to Defendant Echevarria, who had been properly served but had not appeared within the time required.  *Id.*  That same day, the Clerk entered default against Defendant Echevarria.  Doc. 90.

Still on that same day, Defendant Echevarria, represented by the same counsel as the Officer Defendants, filed a motion to set aside the Clerk's default, which motion is now under consideration by the Court.  Doc. 91.  In the motion to set aside the Clerk's default, counsel asserted that Defendant Echevarria had promptly notified the City Attorney's Office for the City of

---

[2] The Court interpreted these two identical amended filings as separate motions, one for entry of clerk's default (Doc. 85) and one for default judgment (Doc. 84).

[3] The Court interpreted these two identical filings as separate motions, one for entry of clerk's default (Doc. 86) and one for default judgment (Doc. 87).

[4] The original order was amended to correct docket citations.  *See* Doc. 89 at 1.

Kissimmee that he had been served, but that, through an oversight on the part of counsel, Defendant Echevarria had not made an appearance in this case.  *Id*.  Counsel asserted that Defendant Echevarria had not ignored service, but instead notified the City Attorney's Office as he was required to do, and thought he was being represented by counsel in this case.  *Id*.  Defendant Echevarria also filed a notice in support of his motion that contained an affidavit in which he stated that he contacted the City Attorney's Office within days of being served and was told that a response would be filed on his behalf.  Doc. 121-1.

On July 14, 2017, Plaintiff filed a motion to strike the Judicial Process Defendants' motion to dismiss.  Doc. 92.  The Court denied that motion, cautioned Plaintiff that a motion to strike is not the same as a response in opposition to a motion, and directed Plaintiff to file a response in opposition to the motion to dismiss.  Doc. 93.

Thereafter, the Clerk issued new summonses as to the Officer Defendants, each of whom was then properly served.  *See* Docs. 103-107.

On August 10, 2017, Plaintiff filed a renewed motion for default judgment against Defendant Echevarria, which motion is now under consideration by the Court.  Doc. 108.

On August 17, 2017, the Officer Defendants filed a motion to dismiss or, in the alternative, for a more definite statement, which motion is now under consideration by the Court.  Doc. 110. In their motion to dismiss, the Officer Defendants asserted that the Complaint should be dismissed pursuant to Rule 12(b)(6) for a failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 8.  *Id*.

Thus, the Court now has before it for consideration: the Judicial Process Defendants' motion to dismiss (Doc. 78); Defendant Echevarria's motion to set aside the Clerk's default (Doc. 91); Plaintiff's motion for default judgment against Defendant Echevarria (Doc. 108); and the

Officer Defendants' motion to dismiss (Doc. 110).  Plaintiff has responded in opposition to each of Defendants' motions (Docs. 101; 102; 127) and has also filed what purports to be a "definite statement," apparently in response to the Officer Defendants' alternative request for a more definite statement (Doc. 129).  Finally, Defendant Echevarria filed a response to Plaintiff's motion for default judgement (Doc. 118) and Plaintiff filed a reply thereto (Doc. 128).  The undersigned has considered all of the materials of record in making this Report.

**<u>Allegations in the Complaint</u>**

Plaintiff's Complaint is titled "Complaint for Violation of Civil Rights" and purports to bring a single § 1983 claim against the 15 Defendants.  Doc. 1 at 1-6.  The § 1983 claim is that Defendants, acting under color of state law, violated Plaintiff's "4th, 5th, 6th, 8th, and 14th Amendment Federal Constitutional Rights."  *Id*. at 6.  Plaintiff described the 15 Defendants as members of four categories: Defendant Police Officers (6); Defendant Prosecutors (3); Defendant Public Defenders (4); and Defendant Judges (2).  *Id*. at 7.  Plaintiff brings the § 1983 claim against all 15 Defendants in their official capacity.  *Id*. at 3.  Plaintiff also brought the § 1983 claim against Defendant Ashton and Defendant Echevarria in their individual capacity.  *Id*. at 3-4.

The § 1983 claim is based on the following allegations contained within the Complaint:

On October 4, 2014, at approximately 10:14 p.m., in a parking lot in Kissimmee, Florida, Plaintiff was "unconstitutionally seized" by officers of the KPD.  *Id*. at 7.  Police reports attached to the Complaint describe an incident in which Plaintiff fled on foot, and then via a bicycle, from KPD officers and was eventually apprehended after Plaintiff collided with a patrol car and then a curb.  Doc. 1-1.  As a result of the "unconstitutional seizure," Plaintiff "was seriously injured," in that Plaintiff sustained a broken nose, lacerations, and abrasions.  Doc. 1 at 8-9.  Defendants Wheeler and Layne (KPD Officers) were present at the incident.  *Id*. at 8.  Plaintiff was transported

to the hospital for treatment, where Defendant Cardenas "interfered with [Plaintiff's] patient/doctor examination" by attempting to tell medical personnel what to write in their report. *Id*.  Defendant Echevarria (a KPD Officer) then transported Plaintiff to the Osceola County Jail, where Plaintiff was ultimately detained for 216 days. *Id*. at 9.

In support of the "unconstitutional seizure of Plaintiff," Defendant Downing (a KPD Officer) "filed a perjured probable cause affidavit." *Id*.  That affidavit was "based on false information obtained [by Defendant Downing] from" Defendant Strickland (a KPD Officer). *Id*. That affidavit was the basis for the prosecution of Plaintiff in case number 2014-CT-003885. *Id*. at 10.

In support of the "unconstitutional seizure of Plaintiff," Defendant Echevarria "filed a perjured probable cause arrest affidavit," which formed the basis for Plaintiff's prosecution in case number 2014-CF-003651. *Id*.

On October 6, 2014, Plaintiff had an initial appearance in both cases before Judge Draper, who Plaintiff alleges "disparaged, and attempted to denigrate" him. *Id*.  Plaintiff claims that he then "anticipated" irreparable injury and felt that special circumstances warranted intrusion by a federal court. *Id*.  Thus, on October 10, 2014, Plaintiff filed a petition for a writ of habeas corpus in this Court. *Id*. at 10-11; *see Wright v. Dept. of Corr., et al.*, 6:14-cv-1653-GKS-GJK, at Doc. 1.[5]

---

[5] On December 2, 2014, the Court dismissed Plaintiff's habeas action.  6:14-cv-1653-GKS-GJK, at Doc. 13.  Upon review, the Court noted that Plaintiff's "claims related to illegal arrest, illegal search and seizure, excessive force during arrest, and violation of due process" were not properly raised in that action.  *Id*.  The Court explained that such "claims should be raised in a civil rights complaint filed pursuant to 42 U.S.C. § 1983."  *Id*.  Further, the Court stated that to the extent Plaintiff was asking the Court to dismiss his state charges, he was not entitled to such relief.  *Id*. (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

On November 5, 2014, Plaintiff was charged via Information with felony offenses related to the events of October 4, 2014, in case number 2014-CF-003651.  Doc. 1 at 11-12.  The prosecuting assistant state attorney on that case was Defendant Baird.  *Id.* at 12.  It was alleged that the Information, and a later-filed Amended Information, "was/is defective."  *Id.*  The State filed a nolle prosequi as to case number 2014-CT-003885.  *Id.*

On May 8, 2015, prior to trial in case number 2014-CF-003651, the assigned assistant public defender who was Plaintiff's stand-by counsel, Defendant Bookbinder, filed a "motion to discharge" that incorrectly stated that Plaintiff was arrested on October 5, 2014.  *Id.* at 13.  Prior to trial, Plaintiff filed various pro se motions, including a motion to dismiss alleging that the Information was insufficient and based on false statements by Defendant Echevarria and a motion to suppress related to Plaintiff's arrest.[6]  *Id.*at 13-17.  Judge Craner denied those motions.  *Id.* at 17.

On May 8, 2015, following a bench trial, Plaintiff was adjudicated guilty of resisting an officer with violence, battery on a law enforcement officer, possession of cocaine, and possession of drug paraphernalia.  *Id.*  Plaintiff was sentenced to time served and "ordered to pay a large sum of money."  *Id.*

Plaintiff alleged that he "was denied a fair and speedy trial," and – reading the Complaint extremely liberally due to Plaintiff's *pro se* status – asserted that he suffered a due process violation because the Information did not set forth the essential elements of the charged offenses.  *Id.* at 17-18.

---

[6] The Court is not detailing the numerous factual allegations contained within the Complaint concerning the various motions filed by Plaintiff in the underlying criminal state court action, as those factual allegations are either redundant or otherwise irrelevant to the issues under consideration.

Plaintiff alleged that Defendant Wesley "is the Public Defender." *Id*. at 18.

Following the trial, at the request of Plaintiff, Defendant Bookbinder filed a motion for arrest of judgment, which Judge Craner denied. *Id*.

Plaintiff then filed a notice of appeal in relation to his conviction. *Id*. The Fifth District Court of Appeal, directed that Plaintiff file an amended petition, but the "Public Defender did not comply with the Order. The Public Defender ignored the Order." *Id*. at 19. Plaintiff alleged that Defendant Purdy "is the Public Defender for the Seventh Judicial Circuit." *Id*. Thereafter, Defendant Luker, the assistant public defender who apparently was assigned to Plaintiff's appeal, notified Plaintiff by letter that she intended to file an Anders brief. *Id*. Plaintiff "forbid" Defendant Luker from filing an Anders brief, and Defendant Luker "did not forward" Plaintiff's file to him. *Id*.

On September 15, 2015, Plaintiff filed a petition for habeas corpus with the Florida Supreme Court, in which petition Plaintiff asserted that he was convicted via a "defective" Information that failed to set forth all of the essential elements of counts one and two of the four-count Information. *Id*. at 19-20. On October 5, 2015, the Florida Supreme Court directed the circuit court to review the petition as a motion for post-conviction relief. *Id*. On October 15, 2015, Judge Craner denied Plaintiff's motion. *Id*. Plaintiff then appealed Judge Craner's ruling. *Id*.

While the appeal was pending, in about March 2016, Plaintiff learned that Defendant Baird – the assistant state attorney – filed a notice of provisional supplemental discovery. *Id*. at 20-21. The supplemental information, provided as *Brady* information, stated that Defendant Echevarria had been a witness in the prosecution of Plaintiff and Defendant Echevarria had been suspended by KPD for the pendency of an administrative and criminal investigation. *Id*. at 21.

The Fifth District Court of Appeals, apparently in relation to this supplemental notice, mandated further proceedings before the circuit court and, on May 6, 2016, Plaintiff filed a motion for post-conviction relief. *Id.* Judge Craner denied Plaintiff's motion in part, and directed Plaintiff to amend certain of the claims therein. *Id.* Plaintiff supplemented his motion and continued to file documents concerning his claims that Defendant Echevarria perjured himself in relation to Plaintiff's arrest. *Id.* at 21-22.

On October 18, 2016, the State filed another notice of provision of supplemental discovery, this time notifying Plaintiff and the circuit court that a warrant – signed by Judge Craner – had been issued for the arrest of Defendant Echevarria, who had been charged via Information in case number 2016-CF-001321. *Id.* at 22.[7] Plaintiff also alleged that "the facts are undisputed," that Defendant Echevarria perjured himself on two occasions related to Plaintiff's prosecution, and that Defendant Echevarria "had knowledge that he perjured." *Id.* at 23. Construing Plaintiff's Complaint extremely liberally, he also made an allegation that the State had constructive knowledge of Defendant Echevarria's perjury. *Id.*

In January 2017, Plaintiff filed motions for an evidentiary hearing in relation to his motion for post-conviction relief. *Id.* at 25. Thus, Plaintiff's underlying state court criminal case apparently remains pending.

Finally, Plaintiff made additional allegations that Defendant Echevarria violated Plaintiff's due process rights (*Id.* at 26), that the "prosecution of [Plaintiff] was motivated by bad faith" (*Id.* at 27), that "special circumstances" warrant intrusion into the ongoing state court proceedings (*Id.*), and that Plaintiff suffered irreparable harm (*Id.*).

---

[7] It appears that the criminal case against Echevarria is unrelated to Plaintiff's criminal case, but that Defendant Echevarria was prosecuted for official misconduct. *See* Doc. 78 at 17.

In his request for relief, Plaintiff prayed that the Court: (1) reverse his criminal conviction; (2) institute federal criminal proceedings against Defendant Echevarria; (3) award Plaintiff actual damages; and (4) award Plaintiff punitive damages in the amount of 25,000,000.00. *Id*. at 28.

## Discussion

### 1.   The Judicial Process Defendants' Motions to Dismiss

The Judicial Process Defendants moved to dismiss the Complaint on eleven, separate grounds, which are summarized succinctly at the outset of the motion. Doc. 78 at 1-4. Because, for the reasons stated below, the undersigned believes that there are sufficient bases to recommend that the Complaint be dismissed with prejudice as to the Judicial Process Defendants, the undersigned will not address each and every basis for dismissal argued by the Judicial Process Defendants. Instead, the undersigned will first recommend that the Complaint be dismissed pursuant to Rule 12(b)(6) because it wholly fails to state a claim against the Judicial Process Defendants. Then, the undersigned will recommend that the Complaint be dismissed as to the prosecutors and judges because they were protected by immunity for their actions in relation to this case. Further, the undersigned will recommend that the claim be dismissed as to the public defenders because they were not acting under color of state law. The undersigned also recommends that Plaintiff's requests for injunctive relief – i.e. that his criminal conviction be reversed and that Defendant Echevarria be prosecuted in federal court – be denied. Finally, the undersigned will recommend that, as to the Judicial Process Defendants and as to the requests for injunctive relief against all Defendants, the Court's dismissal be with prejudice.

### a.   *The Complaint Completely Lacks Factual Allegations that State a Claim*

Federal Rule of Civil Procedure 8(a) provides that a pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, (2) a short

and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court is limited in its consideration to the pleadings and any exhibits attached to those pleadings. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). Further, although *pro se* litigants are entitled to a liberal construction of their pleadings, they are still required to conform to the procedural rules. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (discussing Federal Rule of Civil Procedure 4(c)) (citation omitted). And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Plaintiff has purported to bring a single claim pursuant to § 1983 against all of the Judicial Process Defendants. "Section 1983 provides a civil cause of action for 'a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.'" *Lloyd v. Foster*, 298 F. App'x 836, 838 (11th Cir. 2008) (quoting *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)).

Here, Plaintiff alleged absolutely no facts that would entitle him to relief as to the Judicial Process Defendants.[8]

---

[8] The undersigned notes that, based upon the tenor of Plaintiff's responses, it appears that Plaintiff brought the action against the Judicial Process Defendants as a mechanism to get the other Defendants into "trouble," not because the Judicial Process Defendants violated Plaintiff's constitutional rights. This observation is due to Plaintiff's repeated assertions that: "The lyin' and perjur(n) Police Officer Defendants have entrapped the other nine codefendants." *See, e.g.*, Doc. 127 at 18. It appears to the undersigned that Plaintiff is truly seeking to bring this action against the Officer Defendants and Defendant Echevarria.

As to Defendant Baird, who was the assistant state attorney who prosecuted the criminal case against Plaintiff, the only factual allegation in the Complaint regarding Defendant Baird is that he filed a "defective" Information against Plaintiff.  Doc. 1 at 12.  While there is a conclusory allegation near the end of the Complaint that the "prosecution of [Plaintiff] was motivated by bad faith," there is no other factual allegation related to Defendant Baird or any other prosecutor. Indeed, the Complaint lacks any factual allegations whatsoever as to Defendants Ashton and Bondi.  Plaintiff only mentioned Defendant Ashton in quoting the charging language from the Information, and only mentioned Defendant Bondi as the respondent in his federal habeas action. *Id*. at 11.

As to Judge Draper, she is mentioned in the Complaint as the judicial officer who conducted Plaintiff's initial appearance on October 6, 2014, and Plaintiff alleged in a conclusory manner that Judge Draper "disparaged, and attempted to denigrate Plaintiff."  *Id*. at 10.

As to Judge Craner, who presided over Plaintiff's criminal trial and heard subsequent motions, the only factual allegations in the Complaint are that Judge Craner ruled upon Plaintiff's motions and conducted his trial and sentencing.  *Id*. at 17-18, 20-21.  While there is a conclusory allegation that Plaintiff was "denied a fair and speedy trial," to the extent that can be said to be an allegation against Judge Craner, it is wholly conclusory and devoid of any supporting factual allegations.  *Id*. at 17.

As to Defendant Bookbinder, the only factual allegations within the Complaint are that he filed a motion to discharge that incorrectly stated the date of Plaintiff's arrest by one day, and that he filed a motion to arrest judgment at the request of Plaintiff.  *Id*. at 13, 18.

As to Defendant Luker, the only factual allegations within the Complaint are that she sent a letter to Plaintiff stating that she wanted to file an Anders brief, and that she did not forward

Plaintiff's file to him.  *Id*. at 19.  There is also a general, conclusory allegation that the "Public Defender ignored" an order of the appellate court to file an amended petition.  *Id*.  As to Defendants Purdy and Wesley, the elected public defenders for the Seventh and Ninth judicial circuits, respectively, the Complaint contains absolutely no factual allegations other than allegations that they were, in fact, public defenders.  *Id*. at 18-19.

In sum, in the Complaint, Plaintiff made factual allegations that the prosecutors, judges, and defense attorneys conducted their normal, official duties.  There are also some conclusory allegations that the prosecution was taken in "bad faith," that Plaintiff's due process and speedy trial rights were violated, and that an unnamed public defender "ignored" a court order.  However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila*, 326 F.3d at 1185.  Other than a small handful of conclusory allegations, there is not even an attempt by Plaintiff to assert that the Judicial Process Defendants deprived Plaintiff of any right, privilege or immunity under federal law, or committed any malfeasance that would approach a claim under § 1983.  Instead, Plaintiff simply made factual allegations that the prosecutor filed the charges, the defense attorney filed motions, and the judge ruled on the motions.  Thus, liberally construing Plaintiff's claims against the Judicial Process Defendants, Plaintiff has failed to satisfy the pleading requirements of Rule 8.

Plaintiff's response is simply an assertion that the allegations in the Complaint have been admitted because the Judicial Process Defendants filed a motion to dismiss, and not an answer.  *See* Doc. 101.  Plaintiff's position in his response seems to be a misreading of the Federal Rules of Civil Procedure, and is based entirely on assertions that all of the facts contained within the Complaint have been admitted by the Judicial Process Defendants.  Of course, that is incorrect,

and the Judicial Process Defendants properly responded to the Complaint by filing a motion to dismiss and, thus, have not admitted any of the factual allegations contained within the Complaint.

    *b.*  *The Eleventh Amendment*

The Eleventh Amendment to the United States Constitution "bars damages suits against a state in federal court absent a waiver of immunity by the state or a valid congressional override." *Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393 (11th Cir. 2015), cert. denied sub nom. *Wusiya v. City of Miami Beach, Fla.*, 136 S. Ct. 484, (2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). "Congress has not abrogated the states' sovereign immunity for purposes of section 1983 suits for damages, and Florida has not waived its immunity with regard to such suits." *Wusiya*, 614 F. App'x at 393 (citing *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1512, 1520 (11th Cir. 1986)). Thus, the "Eleventh Amendment is an absolute bar to suit for monetary damages by an individual against a State or against officers or employees of the State or its agencies in their official capacities." *Taylor v. Florida*, 2015 WL 2338605, at *3-4 (N.D. Fla. May 13, 2015) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).

Here, Plaintiff has purported to assert a § 1983 claim against the Attorney General of the State of Florida, the elected State Attorney for the Ninth Judicial Circuit of the State of Florida, and one of his assistant state attorneys, all in their official capacities. All three of those defendants are "arms of the state" for purposes of Eleventh Amendment immunity. See *Cyber Zone E-Cafe, Inc. v. King*, 782 F. Supp. 2d 1331, 1337 (M.D. Fla. 2011) ("The State Attorney is an 'arm of the state' and falls within the ambit of the State's Eleventh Amendment immunity."); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself."). Thus, to the extent that the § 1983

claim is made against Defendants Bondi, Ashton, and Baird in their official capacities, that claim is barred by the Eleventh Amendment and should be dismissed with prejudice.

### c. *The Prosecutors are Protected by Immunity for Their Official Actions*

Plaintiff's § 1983 claim against the prosecutors is also barred by prosecutorial immunity. As the Eleventh Circuit has explained, "prosecutors are entitled to absolute immunity from suits under section 1983 for activities that are 'intimately associated with the judicial phase of the criminal process.'" *Allen v. Florida*, 458 F. App'x 841, 843 (11th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976) (concluding that a prosecutor is immune from suit for actions performed while "initiating a prosecution and ... presenting the State's case")); *see also Cyber Zone E-Cafe, Inc.*, 782 F. Supp. 2d at 1335-36 (noting that prosecutorial immunity applies only to claims for monetary relief). The actions of a prosecutor protected by absolute immunity include "all actions performed within the scope of the prosecutor's role as a government advocate, including 'the initiation and pursuit of criminal prosecution, and most appearances before the court, including examining witnesses and presenting evidence.'" *Lloyd*, 298 F. App'x at 839 (quoting *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004)). "Indeed, a prosecutor is absolutely immune to suits for money damages unless the acts or omissions giving rise to the plaintiff's claim are outside the 'scope and territorial jurisdiction of his office.'" *Lloyd*, 298 F. App'x at 839 (quoting *Elder v. Athens-Clarke Cty., Ga.*, 54 F.3d 694, 695 (11th Cir. 1995)). Under Florida law:

> Each assistant state attorney appointed by a state attorney shall have all of the powers and discharge all of the duties of the state attorney appointing him or her, under the direction of that state attorney. No such assistant state attorney may sign informations unless specifically designated to do so by the state attorney. He or she shall sign indictments, informations, and other official documents, as assistant state attorney, and, when so signed, such indictments, informations, and documents shall have the same force and effect as if signed by the state attorney.

Fla. Stat. § 27.181(2).

Here, the factual allegations related to the prosecutors are that Defendant Baird filed the Information in Plaintiff's criminal case, the Information was filed under the authority of Defendant Ashton, and Defendant Bondi was the respondent in Plaintiff's federal habeas action.  Although there are conclusory allegations that the prosecution was made in "bad faith," those allegations do nothing to strip the prosecutors in this case of their absolute immunity from suit under § 1983 for their actions in prosecuting Plaintiff and responding to his habeas petition.  Indeed, it seems clear that the actions complained of in relation to Defendants Bondi, Ashton, and Baird relate directly to their role as government advocates.  Thus, they are entitled to absolute prosecutorial immunity.

     *d.   The Judges are Protected by Immunity for Their Official Actions*

Similarly, Plaintiff's § 1983 claim against Judge Draper and Judge Craner is barred.  As the Eleventh Circuit has explained, "Judges are entitled to absolute immunity from suits for acts performed while they are acting in their judicial capacity unless they acted in complete absence of all jurisdiction.  Immunity applies even when the judge's acts are in error, malicious, or in excess of his or her jurisdiction."  *Allen v. Florida*, 458 F. App'x 841, 843 (11th Cir. 2012) (internal quotations and citations omitted); *see also Lloyd*, 298 F. App'x at 840 ("[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).  Plaintiff's allegations in relation to both judges relate directly to the judges' duties in presiding over Plaintiff's criminal case.  There is absolutely no allegation that the judges acted in the absence of all jurisdiction.  It appears clear that Judge Draper and Judge Craner acted within their jurisdictional and judicial capacity and, thus, they are entitled to absolute judicial immunity.

*e.   The Public Defenders were not Acting Under Color of State Law*

Plaintiff's § 1983 claim against the public defenders is also without merit.  As the Eleventh Circuit has explained, "[p]ublic defenders do not act under color of state law for purposes of section 1983 'when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Wusiya*, 614 F. App'x at 392 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)); *see also Bell v. HCR Manor Care Facility of Winter Park*, 2010 WL 11519394, at *3 (M.D. Fla. Aug. 6, 2010) ("The *Dodson* court held that a public defender acting in his normal capacity as legal counsel was not acting under color of law for purposes of section 1983, though paid by the state, because the defender works under canons of professional responsibility that mandate his exercise of independent judgment on behalf of the client.") (citing *Dodson*, 454 U.S. at 321)).

To be sure, there are no allegations in the Complaint that the public defenders acted under color of state law, other than a passing allegation that all Defendants acted under color of state law.  Doc. 1 at 6-7.  To the extent that factual allegations exist concerning the public defenders, those allegations relate to the traditional functions of counsel to a defendant in a criminal proceeding.  Indeed, the allegations against Defendant Bookbinder relate to his filing of motions on behalf of Plaintiff in Plaintiff's criminal case.  The allegations related to Defendant Luker relate to her actions, or possible inaction, in relation to Plaintiff's appeal of his conviction in his criminal case.  There are no allegations in relation to Defendants Purdy and Wesley, other than that they were, in fact, public defenders.  Accordingly, there is no basis for the § 1983 claim against Defendants Bookbinder, Luker, Purdy and Wesley because they did not act under color of state law.

f.   *The Claim Against Defendant Ashton in His Individual Capacity*

In addition to asserting the § 1983 action against Defendant Ashton in his official capacity, Plaintiff also stated in the Complaint that he is bringing the claim against Defendant Ashton in his "individual capacity." Doc. 1 at 3. There is no indication in the Complaint why Defendant Ashton was singled out for an assertion of individual liability.[9] However, to the extent that the Complaint brings a claim against Defendant Ashton in his individual capacity, that claim is barred by qualified immunity.

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002). "[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting *Lee*, 284 F.3d at 1194). "If the official was acting within the scope of his discretionary authority the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." *Id.*

---

[9] There are two assertions in the Complaint that the § 1983 claim is brought against a defendant in his individual capacity. There is some ambiguity in how the Complaint is drafted as to whether the allegation relates to the name – in a list of the names of the 15 Defendants – that precedes or follows the language "individual capacity and official capacity." The language "individual capacity and official capacity" immediately follows Defendant Ashton's name and personal information, and there is no space between that allegation and Defendant Ashton's information. In resolving the ambiguity, the undersigned looked to the second allegation of individual capacity, which followed the name of Defendant Echevarria and preceded the name of Defendant Layne. Because the only allegation against Defendant Layne was that he was "present" at the incident, and because by far the most allegations in the Complaint relate to Defendant Echevarria, the undersigned safely concluded that Plaintiff sought to bring the action against Defendant Echevarria in his individual capacity – the name that immediately followed the language "individual capacity and official capacity."

"As the Supreme Court recently reaffirmed in *Pearson v. Callahan*, 555 U.S. 223 (2009), a court must grant qualified immunity to a government official unless the plaintiff can show: (1) that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officer; and (2) that the unlawfulness of the defendant's actions was "clearly established" at the time of the incident." *Cyber Zone E-Cafe, Inc.*, 782 F. Supp. 2d at 1337-38. Courts are "permitted to exercise [their] sound discretion" to decide which prong of this inquiry to address first. *Pearson,* 555 U.S. at 236.

Here, there are absolutely no factual allegations in the Complaint related to Defendant Ashton. In fact, his name only appears in a list of defendant names (Doc. 1 at 2-3) and when Plaintiff quotes the language in the Information filed in the underlying state court criminal case (*Id*. at 11). Again, while there are some conclusory allegations that the prosecution was brought in "bad faith," such allegations do nothing to defeat Defendant Ashton's qualified immunity. In approving the Information charging Plaintiff – liberally construed, the only arguable factual allegation in the Complaint related to Defendant Ashton – there can be little doubt that Defendant Ashton acted within the scope of his discretionary authority as an elected state attorney. Plaintiff failed to allege sufficiently, let alone establish, that Defendant Ashton violated Plaintiff's constitutional rights. Accordingly, to the extent that Claimant sought to bring this action against Defendant Ashton in his individual capacity, it should be dismissed on the basis of qualified immunity.

### g. *The Requests to Reverse Plaintiff's State Court Conviction*

In the Complaint, in addition to claims for monetary damages, Plaintiff requested that the Court reverse his state court criminal conviction. Because it appears from the Complaint and other documents filed in this case that the state court proceedings related to that state criminal case are

still on-going, Plaintiff's request is truly a request that this Court intervene in on-going state court criminal proceedings.  In *Cyber Zone E-Cafe, Inc.*, the court explained that:

> Under the *Younger* abstention doctrine once a state prosecution is pending, a criminal defendant is barred from challenging the constitutionality of a state law in federal court except under very limited circumstances.  A federal court could enjoin a pending state criminal proceeding only if "the danger of irreparable loss is both great and immediate," and only if "the threat to the plaintiff's federally protected rights [is] one that cannot be eliminated by his defense against a single criminal prosecution."  401 U.S. at 45-46, 91 S.Ct. 746 (internal citation and quotation marks omitted).  To justify federal intervention, the Plaintiffs "must show manifest bad faith and injury that is great, immediate, irreparable, constituting harassment of the plaintiff in the exercise of his constitutional rights, and result in a deprivation of meaningful access to the state courts."  *Allee v. Medrano*, 416 U.S. 802, 836, 94 S.Ct. 2191, 2210, 40 L.Ed.2d 566 (1974).

782 F. Supp. 2d at 1339.  In that case, the court abstained under the *Younger* doctrine because the plaintiffs' state court criminal proceedings were still pending and the plaintiffs had state court remedies that they were pursuing, during which they had the ability to litigate the same issues raised in their claims.  *Id*.  On that basis, the court dismissed their claims in their entirety.  *Id*.

Here, Plaintiff's criminal proceedings are similarly on-going and Plaintiff is seeking to reverse his criminal proceedings in state court, in part, on the same basis that he seeks to do so in this Court – i.e., Defendant Echevarria's alleged perjury.  Accordingly, abstention under *Younger* is appropriate here.  Further, although Plaintiff has made conclusory allegations that he has suffered "irreparable" harm from a prosecution initiated in "bad faith," Plaintiff has fallen woefully short of allegations that would give rise to this Court exercising jurisdiction to enjoin his ongoing state court criminal proceedings.

h.  *The Request to Initiate Federal Criminal Proceedings Against Defendant Echevarria*

The Complaint also contains what appears to be a request that this Court initiate a federal criminal prosecution against Defendant Echevarria.  Doc. 1 at 28.  This request is due to be denied because Plaintiff failed to identify any legal basis for the Court to criminally prosecute Defendant Echevarria or, more accurately, direct the executive branch to do so.  Further, there is an on-going state criminal prosecution of Defendant Echevarria, and, under the *Younger* doctrine and principles of comity, the Court should abstain from interfering in that on-going state court criminal proceeding.

i.  *Allowing Amendment Would be Futile and Dismissal with Prejudice is Appropriate*

Generally, a *pro se* plaintiff must be given at least one chance to amend his or her complaint.  *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (per curiam) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam)); *see also Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003).  However, a district court need not allow an amendment where amendment would be futile.  *Cornelius*, 585 F. App'x at 1000 (citing *Cockrell*, 510 F.3d at 1310).  "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."  *Id*. (citing *Cockrell*, 510 F.3d at 1310) (internal quotation marks omitted).

Here, as to the Judicial Process Defendants and the requested injunctive relief, the undersigned respectfully recommends that the Complaint be dismissed with prejudice, because amendment of the Complaint with respect to those Defendants and that requested relief would be futile.  Indeed, the Complaint set forth absolutely no factual allegations that would give rise to liability under § 1983 as to the Judicial Process Defendants.  The § 1983 claim against the judges and prosecutors is barred by the Eleventh Amendment and those officials are protected by

immunity from suits for damages such as this one.[10]  The § 1983 claim against the public defenders is misplaced because they did not act under color of state law.  Finally, to the extent that Plaintiff is seeking to have this Court reverse his state court criminal conviction or prosecute Defendant Echevarria federally, the Court should dismiss with prejudice those claims for relief.

## 2. **Defendant Echevarria's Motion to Set Aside Clerk's Default and Plaintiff's Motion for Default Judgment**

Defendant Echevarria has moved to have this Court set aside the entry of Clerk's default, and Plaintiff has moved for final default judgment against Defendant Echevarria.  A court "may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  "Good cause" is a liberal standard that varies from situation to situation.  *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (citation omitted).

Here, in the motion to set aside the Clerk's default, counsel for Defendant Echevarria has asserted that Defendant Echevarria promptly notified the City Attorney's Office for the City of Kissimmee that he had been served, but that through an oversight on the part of counsel, an appearance in this case had not been made on behalf of Defendant Echevarria.  Doc. 91.  Counsel asserted that Defendant Echevarria had not ignored service, but instead had notified the City Attorney's Office as he was required to do, and thought he was being represented by counsel in this case.  *Id*.  Defendant Echevarria also filed a notice in support of his motion that contains an affidavit in which he states that he contacted the City Attorney's Office within days and was told that a response would be filed on his behalf.  Doc. 121-1.

---

[10] The undersigned also agrees that the Complaint is due to be dismissed for the alternative reason that state officials who are sued in their official capacity are not considered "persons" within the meaning of § 1983.  *Mich. Dep't of State Police*, 491 U.S. at 70-71.

The Clerk's default should be set aside.  First, the Court generally prefers that cases be resolved on their merits, rather than by default judgment.  *See Fl. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (per curiam) ("[D]efaults are seen with disfavor because of the strong policy of determining cases on their merits.").  Second, the undersigned finds that Defendant Echevarria has demonstrated good cause to set aside the clerk's default.  *See* Docs. 91; 121-1.  Indeed, it appears from the record that Defendant Echevarria was properly served, promptly notified his counsel, and believed he was represented in and defending this case.  The oversight of counsel, whether counsel in this case or at the City Attorney's Office, should not act as a bar preventing Defendant Echevarria from litigating this case and result in a judgment against him. Plaintiff's response in opposition to the motion does not convince the undersigned otherwise. Further, because the Clerk's default should be set aside, Plaintiff's motion for default judgment should be denied.

### 3.  The Officer Defendants' Motion to Dismiss

The Officer Defendants have moved to dismiss the Complaint or, in the alternative, for a more definite statement.  Doc. 110.  In their motion to dismiss, the Officer Defendants asserted that the Complaint should be dismissed pursuant to Rule 12(b)(6) for a failure to satisfy the pleading requirements of Rule 8.  *Id.*  In response, Plaintiff asserted that the Officer Defendants had admitted the allegations in the Complaint by failing to file an answer.

While there are numerous factual allegations related to Defendant Echevarria throughout the Complaint,[11] the only factual allegations directed to the Officer Defendants appear together on

---

[11] The undersigned notes again that, for purposes of this Report, Defendant Echevarria is not contained within the description of the "Officer Defendants," and did not join in their motion to dismiss, as he was subject to a Clerk's default at the time the motion was filed.

three pages on the Complaint. Doc. 1 at 8-10. In the Complaint, Plaintiff made the following factual allegations in relation to each of the Officer Defendants:

- Defendant Wheeler was present at the October 4, 2014 incident (¶ 2);

- Defendant Layne was present at the October 4, 2014 incident (¶ 3);

- Defendant Cardenas was present at the hospital on October 4, 2014, and "interfered with [Plaintiff's] patient/doctor examination" by "attempt[ing] to tell the doctor what to write in her report" (¶¶ 6, 7, 10, 11);

- Defendant Downing "filed a perjured probable cause affidavit . . . based upon false information obtained from [Defendant Strickland]," which was the basis of Plaintiff's criminal prosecution (¶¶ 18, 19, 22);

- Defendant Strickland did not provide a sworn or written statement (¶¶ 20, 21)

Doc. 1 at 8-10 (paragraph citations are to the paragraphs of the Complaint).

Based on those factual allegations, Plaintiff falls well short of pleading a § 1983 claim against the Officer Defendants. Indeed, it is alleged simply that Defendants Wheeler and Layne were "present" and that Defendant Strickland did *not* provide a sworn or written statement. Certainly those Defendants cannot be said to have violated Plaintiff's "4th, 5th, 6th, 8th, and 14th Amendment" rights based upon those factual allegations. Similarly, the only allegation concerning Defendant Cardenas is that he was present at the hospital following Plaintiff's arrest and attempted to interfere with Plaintiff's "doctor/patient relationship" by telling the doctor what to write in report; again, factual allegations that fail to support an allegation that Defendant Cardenas violated Plaintiff's "4th, 5th, 6th, 8th, and 14th Amendment" rights. The most troubling allegation is that Defendant Downing filed a "perjured" probable cause affidavit supporting Plaintiff's arrest. However, the allegation in the Complaint is actually that the false information came from

Defendant Strickland, and there is no indication – other than the conclusory use of the term "perjured" – that either Defendant Strickland or Defendant Downing knew the information therein was false.  Read in context with the numerous allegations in the Complaint targeting Defendant Echevarria, it appears to the undersigned that Plaintiff is actually alleging that the person who knowingly provided false information in support of his arrest was Defendant Echevarria, who is now facing state court criminal charges for official misconduct.  Thus, there are no factual allegations that Defendants Strickland or Downing did anything that could be construed as a violation of Plaintiff's "4th, 5th, 6th, 8th, and 14th Amendment" rights.

In the Complaint, Plaintiff purported to state a § 1983 claim against the Officer Defendants in their official capacities as KPD officers.  But Plaintiff wholly failed to meet the pleading requirements of Rule 8 as to the Officer Defendants.  Thus, the Complaint should be dismissed as to the Officer Defendants.  Because of Plaintiff's *pro se* status, the undersigned recommends that the Complaint be dismissed without prejudice and that Plaintiff be permitted to file an amended complaint, if he so chooses, attempting to reassert his claims against the Officer Defendants and Defendant Echevarria.  The undersigned notes that the Officer Defendants raised no grounds in their motion to dismiss that would necessarily result in a dismissal with prejudice.  Because the undersigned is recommending dismissal of the Complaint, the undersigned recommends that the Officer Defendants' alternative request for a more definite statement be denied.

**<u>Conclusion</u>**

As set forth in this Report, the undersigned respectfully recommends that the Complaint be dismissed with prejudice as to the Judicial Process Defendants – the prosecutors, judges, and public defenders – and that Plaintiff's claims to reverse his criminal conviction and initiate federal criminal proceedings against Defendant Echevarria be similarly dismissed with prejudice.  Further,

the undersigned recommends that the Complaint be dismissed without prejudice as to the Officer Defendants, and that Plaintiff be given leave to amend the Complaint as to the Officer Defendants and also to reassert his claims against Defendant Echevarria. The Complaint remains pending as against Defendant Echevarria, against whom the vast majority of Plaintiff's claims are directed and who has not yet responded to the Complaint. The Clerk's default against Defendant Echevarria should be set aside and Defendant Echevarria should be given an opportunity to respond to the Complaint or, if filed, the amended complaint.

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Judicial Process Defendants' motion to dismiss and strike (Doc. 78) be **GRANTED** to the extent that:

   a. the Complaint be dismissed with prejudice as to the Judicial Process Defendants;

   b. the Complaint be dismissed with prejudice to the extent that it seeks a reversal of Plaintiff's state court criminal conviction;

   c. the Complaint be dismissed with prejudice to the extent it seeks the initiation of federal criminal proceedings against Defendant Echevarria;

   and **DENIED** in all other respects.

2. Defendant Echevarria's motion to set aside Clerk's default (Doc. 91) be **GRANTED**, and the Clerk be directed to **VACATE** the Clerk's entry of default (Doc. 90) against Defendant Echevarria;

3. Plaintiff's motion for default judgment against Defendant Echevarria (Doc. 108) be **DENIED**;

4. The Officer Defendants' motion to dismiss (Doc. 110) be **GRANTED** to the extent that the Complaint is dismissed without prejudice as to the Officer Defendants, and **DENIED** in all other respects;

5. That Plaintiff be given leave to file an amended complaint within 14 days of the Court's order on this Report, if the Report is so adopted; and

6. That Defendant Echevarria be given leave to respond to the Complaint, or the amended complaint, if filed, within 28 days of the Court's order on this Report, if the Report is so adopted.

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **If the parties have no objection to this Report and Recommendation, they may promptly file a joint notice of no objection in order to expedite the disposition of this case.**

Recommended in Orlando, Florida on October 13, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy